UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| M.B., et al., | ) |
|     Plaintiffs, | ) |
| v. | ) Case No. 2:17-cv-04102-NKL |
| Jennifer Tidball, et al., | ) |
|     Defendants. | ) |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AND SUGGESTIONS IN SUPPORT**

The parties have entered into a proposed Settlement Agreement (the "Settlement Agreement" or "Agreement") resolving this class action lawsuit. The Agreement is attached to this Motion as Exhibit 1.

Pursuant to Fed. R. Civ. P. 23(e), "a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." Generally, such approval is obtained through a two-step process: First, counsel submits the terms of the proposed settlement to the court, and the court makes a preliminary fairness evaluation. *Manual for Complex Litigation, Fourth* § 21.632 (2004). Second, if preliminary approval is granted, the court directs that notice of the settlement be given to members of the class, solicits comments and objections from class members and interested parties, and holds a formal fairness hearing to determine whether the proposed settlement is fair, reasonable, and adequate. *Id.* §§ 21.633-35.

Here, the parties undertake the first step in the approval process. They respectfully jointly request that the Court enter the Proposed Order Granting Preliminary Approval of Settlement

Agreement, Setting Hearing, and Directing Class Notice.[1] The Proposed Order would preliminarily approve the Settlement Agreement and authorize the form and manner of a Notice of Proposed Class Action Settlement to be sent to Class Members, attached as Exhibit 2.

## I. OVERVIEW OF THE LITIGATION

Plaintiffs, by their Next Friends and through counsel, commenced this action on June 12, 2017 against the Director of the Children's Division ("CD" or "Children's Division") of the Department of Social Services ("DSS") and the Acting Director of DSS (collectively, "Defendants"), each in their official capacities. The Complaint, as amended on July 3, 2017, alleges due process violations with respect to Defendants' oversight of the administration of psychotropic medications to Missouri foster children.

In bringing this action on behalf of themselves and similarly situated children, Plaintiffs sought to obtain declaratory and injunctive relief regarding at least three alleged deficiencies in Defendants' policies, procedures, practices, and customs with respect to the administration of psychotropic drugs: (1) failure to maintain, and to furnish to caregivers and prescribing physicians, up-to-date medical records detailing each child's physical and mental health history; (2) failure to ensure informed consent to the administration of psychotropic medication, both at the outset and as treatment continues; and (3) failure to ensure secondary review of all outlier prescriptions by a qualified, independent child psychiatrist. On July 19, 2018, over Defendants' objections, the Court certified a class (the "Plaintiff Class") consisting of "all children in Children's Division foster care custody who presently are, or in the future will be, prescribed or administered one or more

---

[1] Concurrently with this filing, the parties are submitting to the Court by e-mail a Proposed Order in Microsoft Word format.

psychotropic medications while in state care." *M.B. v. Corsi*, 327 F.R.D. 271, 282 (W.D. Mo. 2018).[2]

In the two years since the suit has been filed, the parties have engaged in extensive mediation, discovery, and litigation:

- The parties conducted preliminary mediation sessions in late-2017 with Professor James Levin at the University of Missouri School of Law.

- The parties undertook substantial document production and electronic discovery, including exchanging several rounds of interrogatories and requests for production.

- The parties explored and presented the issues in the case through a variety of filings, including fully briefed motions before the District Court to dismiss the case and for certification of the Plaintiff Class, and a fully briefed motion to the Eighth Circuit regarding class certification.

- The parties took and defended multiple depositions.

- The parties each retained experts, including professionals in the fields of child psychiatry, pharmacology, and statistics.

On June 14, 2018, this Court directed the parties to participate in mediation with the Director of the Mediation and Assessment Program ("MAP") for the Western District of Missouri. Doc. 174. The parties immediately contacted the MAP Director and began settlement negotiations under her guidance. Nearly a year later, after extensive mediation efforts, the parties notified the

---

[2] On August 2, 2018, Defendants petitioned for interlocutory appeal of this Court's class-certification order pursuant to Federal Rule of Civil Procedure 23(f), which the U.S. Court of Appeals for the Eighth Circuit granted on August 22, 2018. The interlocutory appeal is fully briefed and was argued before the Eighth Circuit on April 18, 2019. The parties recently notified the Eighth Circuit that a settlement agreement had been reached. If this Settlement Agreement receives final approval in the trial court, Defendants intend to take additional steps to formally dismiss or resolve the appeal. If the settlement does not receive final approval in the District Court, Defendants intend to pursue the appeal.

Court on May 28, 2019 that they had reached an agreement in principle to settle the case. Doc. 270. The Settlement Agreement, Exhibit 1, was executed by all parties as of June 10, 2019. The Settlement Agreement resolves Plaintiffs' and the Plaintiff Class's remaining substantive and procedural due process claims brought under the Fourteenth Amendment of the U.S. Constitution. The Settlement Agreement explicitly contemplates dismissal of the pending claims with the Court retaining jurisdiction for purposes of enforcing the terms of the Settlement Agreement.

## II. PRINCIPAL TERMS OF THE SETTLEMENT AGREEMENT

Plaintiffs continue to believe that their due process claims are meritorious and that this matter was properly certified as a class action. Defendants continue to believe that class certification was inappropriate and their policies and procedures have not violated and do not violate the legal or Constitutional rights of any member of the Class. But both sides recognize the risks, burdens, and uncertainties inherent to litigation. And it became apparent to the parties that they share some significant common ground: a shared commitment to ensuring that all foster children in Missouri reasonably receive the medical care they need, and that relevant actors in the foster care system reasonably oversee (or have an opportunity to raise issues regarding) the administration of psychotropic medications. Because of the complexity of the issues being addressed, the parties included subject matter experts in multiple mediation sessions.

As a result, the Settlement Agreement addresses – in a detailed and specific manner – the issues raised in Plaintiffs' Amended Complaint. Although the terms of the Settlement Agreement speak for themselves, the Agreement includes policy and procedure commitments relating to:

- Training of case management staff and resource providers.
- Medication monitoring, mental health assessments, medical examinations, and concurrent non-pharmacological treatment.

- Medical records, including efforts to build system and reporting capabilities and to comply with CD policy on record collection and distribution.

- Secondary review of designated prescriptions of psychotropic medications by a child and adolescent psychiatrist.

- Informed consent and youth assent to the administration of psychotropic medications, including periodic review.

- A Psychotropic Medication Advisory Committee to provide professional and technical consultation and policy advice on issues related to psychotropic medication.

- Excessive dosage guidelines based on advice from and consultation with medical and clinical experts.

Exhibit B to the Settlement Agreement sets forth benchmarks and data sharing for each section of the Agreement. Finally, the Settlement Agreement provides for an independent "Data Validator," to be retained by Defendants, for purposes of verifying and reporting on data in connection with the exit criteria identified in the Agreement.

### III. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

"When a proposed class-wide settlement is reached, it must be submitted to the court for preliminary approval." *Komoroski v. Util. Serv. Partners Private Label, Inc.*, No. 4:16-CV-00294-DGK, 2017 WL 3261030, at *1 (W.D. Mo. July 31, 2017). "Preliminary approval does not require the court to decide the ultimate question whether a proposed settlement is fair, reasonable, and adequate. At this stage, the issue is whether the proposed settlement falls within the range of fairness so that notice of the proposed settlement should be given to class members and a hearing should be scheduled to consider final approval." *Id.* (citing *Manual for Complex Litigation*, *supra*, § 21.632). Put another way, "[a]t the preliminary approval stage, the 'fair, reasonable, and

5
Case 2:17-cv-04102-NKL   Document 280   Filed 07/08/19   Page 5 of 13

adequate' standard is lowered, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies." *Schoenbaum v. E.I. DuPont de Nemours & Co.*, No. 4:05-CV-01108-ERW, 2009 WL 4782082, at *3 (E.D. Mo. Dec. 8, 2009). The types of issues the Court may consider on a motion for preliminary approval include "whether the settlement carries the hallmarks of collusive negotiation or uninformed decision-making, is unduly favorable to class representatives or certain class members, or excessively compensates attorneys." *Id.* A proposed settlement "is presumptively reasonable at the preliminary approval stage, and there is an accordingly heavy burden of demonstrating otherwise." *Id.*; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is presumptively valid." (internal quotation marks and citation omitted)).

Preliminary approval of the Settlement Agreement in this case is warranted. As discussed above, the Settlement Agreement directly addresses alleged due process violations in connection with the oversight of the administration of psychotropic medications to foster children in Defendants' custody. The Eighth Circuit has long recognized that "[t]he law strongly favors settlements" and "[c]ourts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir. 1999) (stating that "[j]udges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel" (alteration in original) (citation omitted)). Additionally, "[a]s a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming." *Little Rock Sch. Dist.*, 921 F.2d at 1383.

There is no basis for any assertion that the Settlement Agreement is based on inadequate information or is the product of inappropriate collusion. The Settlement Agreement is the result of

6
Case 2:17-cv-04102-NKL   Document 280   Filed 07/08/19   Page 6 of 13

extensive, arm's length negotiations between seasoned counsel, with the assistance of various technical and other subject matter experts. A court should give weight to the experience and considered views of the attorneys who prosecuted the case and negotiated the settlement. *See DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) (noting that "[t]he views of the parties to the settlement must also be considered," particularly where "class counsel is experienced in this type of litigation"); *In re H&R Block IRS Form 8863 Litig.*, No. 4:13-MD-02474-FJG, 2016 WL 7229890, at *1 (W.D. Mo. Jan. 12, 2016) (granting preliminary approval to an agreement that "was entered into by experienced counsel and only after extensive arm's-length negotiations"). Further, the Settlement Agreement was reached through numerous in-person and telephonic mediation sessions with a highly experienced and nationally respected mediator, after continuous back-and-forth communications over almost a year. *See In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liab. Litig.*, No. 4:08-1967-MD-W-ODS, 2011 WL 13152798, at *1 (W.D. Mo. Jan. 7, 2011) (granting preliminary approval to a settlement achieved by "experienced counsel" after "extensive arms-length negotiations" which included "mediation supervised by a former United States District Judge"); *Tracy v. Telemetrix, Inc.*, No. 8:12-CV-359, 2017 WL 5590217, at *1-2 (D. Neb. Nov. 16, 2017) (approving a class settlement where the parties engaged in "arms-length negotiations" with a "highly experienced mediator"), *report and recommendation adopted*, No. 8:12-CV-359, 2017 WL 5564565 (D. Neb. Nov. 17, 2017).

Similarly, "[t]he proceedings that occurred before the parties reached the Settlement Agreement gave counsel opportunity to adequately assess this case's strengths and weaknesses and thus to structure the Settlement in a way that adequately accounts for those strengths and weaknesses." *In re H&R Block*, 2016 WL 7229890, at *1; *see also Tracy*, 2017 WL 5590217, at *2 (observing that the "proposed settlement comes at an advanced stage of the lawsuit, after both

sides explored the facts and the potential benefits and risks of proceeding to trial"). Settlement was reached in this case after Plaintiffs had received approximately 1.5 million pages of documents from Defendants, including emails, spreadsheets, case files, medical records, and internal reports, and Plaintiffs had produced nearly 50,000 pages of documents to Defendants. The parties engaged in fifteen fact and 30(b)(6) depositions and exchanged numerous requests for production and interrogatories. The parties each had or retained experts in fields including child psychiatry, pharmacology, and statistics. Before certain litigation deadlines were stayed to facilitate mediation, Plaintiffs' experts alone produced more than 100 pages of written reports summarizing their opinions.

Finally, even given the advanced stage of the current litigation, the complexity and expense of further litigation favors approval. Class actions "place an enormous burden of costs and expense upon [] parties," *Marshall*, 787 F.3d at 512 (alteration in original) (citation omitted), and "[t]he very purpose of compromise is to avoid the delay and expense of . . . a trial," *DeBoer*, 64 F.3d at 1178 (second alteration in original) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975)). Defendants have alleged numerous legal and factual defenses that, absent settlement, will require significant additional discovery, including the taking of previously scheduled depositions of several remaining fact witnesses, the provision of supplemental interrogatory and request-for-production responses, the production of Defendants' expert reports, and the taking and defending of the depositions of Plaintiffs' and Defendants' expert witnesses. *Daubert* and dispositive motions loom as well, along with all of the effort required to prepare for any trial. Absent approval of the Settlement Agreement, this pre-trial and trial work (not to mention the work associated with any substantive appeal) is expected to take a significant additional amount of attorney time and judicial resources.

8
Case 2:17-cv-04102-NKL   Document 280   Filed 07/08/19   Page 8 of 13

## IV. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

Rule 23 provides that "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A). The adequacy of a settlement notice in a class action is measured by reasonableness. *Petrovic*, 200 F.3d at 1153 (holding that the notice of a class action settlement "need[s] only satisfy the 'broad reasonableness standards imposed by due process'" (quoting *Grunin*, 513 F.2d at 121 (internal quotations omitted))). Class notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The parties in this case have agreed to a Notice of Proposed Class Action Settlement attached as Exhibit 2. The proposed Notice summarizes the topics addressed by the proposed Settlement Agreement, provides instructions on how to obtain full copies of the Settlement Agreement, and advises recipients what to do if they have questions. The Notice describes the procedures for persons who wish to be heard in favor of or in objection to the Settlement Agreement and will specify the date, time, and place of the formal fairness hearing to be set by the Court. The proposed Notice comports with Rule 23 and the requirements of due process.

## V. CONCLUSION

Taking into account the standards set forth above, the proposed Settlement Agreement falls within the range of possible approval. The parties respectfully request that the Court enter the Proposed Order Granting Preliminary Approval of Settlement Agreement, Setting Hearing, and Directing Class Notice. The Proposed Order will preliminarily approve the Settlement Agreement and authorize the form and manner of a Notice of Proposed Class Action Settlement to be sent to the Class Members.

DATED: July 8, 2019

Respectfully submitted by:

CHILDREN'S RIGHTS, INC.

/s/ *Elizabeth Pitman Gretter*
Elizabeth Pitman Gretter, *admitted pro hac vice*
Samantha M. Bartosz, *admitted pro hac vice*
Stephen Dixon, *admitted pro hac vice*
Aaron Finch, *admitted pro hac vice*
Erin McGuinness, *admitted pro hac vice*
Danielle Rosenthal, *admitted pro hac vice*
Daniele Gerard, *admitted pro hac vice*
Jonathan King, *admitted pro hac vice*
88 Pine Street, Suite 800
New York, New York 10005
(212) 683-2210
(212) 683-4015 (fax)
egretter@childrensrights.org
sbartosz@childrensrights.org
sdixon@childrensrights.org
afinch@childrensrights.org
emcguinness@childrensrights.org
drosenthal@childrensrights.org
dgerard@childrensrights.org
jking@childrensrights.org

SAINT LOUIS UNIVERSITY LEGAL CLINIC

John J. Ammann, MO Bar No. 34308
100 N. Tucker Blvd., Suite 704
Saint Louis, MO 63101-1911
(314) 977-2778
(314) 977-1180 (fax)
ammannjj@slu.edu

NATIONAL CENTER FOR YOUTH LAW

Leecia Welch, *admitted pro hac vice*
Poonam Juneja, *admitted pro hac vice*
Freya Pitts, *admitted pro hac vice*
405 14th Street, 15th Floor
Oakland, California 94612

(510) 835-8098
(510) 835-8099 (fax)
lwelch@youthlaw.org
pjuneja@youthlaw.org
fpitts@youthlaw.org

MORGAN, LEWIS & BOCKIUS LLP

Scott T. Schutte, *admitted pro hac vice*
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
(312) 324-1000
scott.schutte@morganlewis.com

ATTORNEYS FOR PLAINTIFFS

**ERIC SCHMITT**
Missouri Attorney General

*/s/ Russell J. Keller*
Russell J. Keller, MO Bar No. 58393
Assistant Attorney General
615 East 13th Street, Suite 400
Kansas City, MO 64106
Phone: 816-889-5023
Fax: 816-889-5006
Russell.Keller@ago.mo.gov

Scotty L. Allen, MO Bar No. 49605
Assistant Attorney General
Missouri Attorney General's Office
207 West High Street
P.O. Box 899
Jefferson City, MO 65102
Phone: 573-751-6733
Fax: 573-751-9456
Scotty.Allen@ago.mo.gov

David Dean, MO Bar No. 67190
Assistant Attorney General
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Phone: 314-340-7950
Fax: 314-340-7029
David.Dean@ago.mo.gov

11

ATTORNEYS FOR DEFENDANTS

# CERTIFICATE OF SERVICE

The undersigned hereby certify that a copy of the foregoing was filed electronically with the Clerk of the Court on July 8, 2019, to be served by the operation of the Court's CM/ECF electronic filing system upon all parties.

    /s/  *Elizabeth Pitman Gretter*
              Plaintiffs' Counsel

    /s/  *Russell J. Keller*
              Defendants' Counsel